**PINE HALL–POMONA CORPORATION,**
Appellee,

v.

**UNITED STATES of America,**
Appellant.

No. 9922.

United States Court of Appeals
Fourth Circuit.

Argued June 4, 1965.

Decided July 28, 1965.

Harry Marselli, Attorney, Department of Justice (Louis F. Oberdorfer, Asst. Atty. Gen., and Lee A. Jackson, David O. Walter and Michael Mulroney, Attorneys, Department of Justice, and William H. Murdock, U. S. Atty., on brief), for appellant.

Leon L. Rice, Jr., Winston-Salem, N. C. (Womble, Carlyle, Sandridge & Rice, Winston-Salem, N. C., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, BRYAN, Circuit Judge, and BARKSDALE, District Judge.

PER CURIAM.

Depletion allowances claimed by Pine Hall-Pomona Corporation in computing its taxable income from mining operations were rejected by the Commissioner of Internal Revenue, and thereupon Pine Hall sued in the District Court for refund of taxes paid but not due if the depletion claims were valid. From a judgment for

the taxpayer, the Government appeals. We affirm.

The tax years are 1950 to 1956, inclusive, excepting 1952. Pine Hall is a North Carolina miner of brick and tile clay which is used at its nearby plants for the manufacture of burnt brick and tile clay products. The output is marketed primarily in northwestern North Carolina and southern Virginia. None of the excavated materials is sold in raw form or at any stage of production prior to the finished article. The distances between the plants and the mines vary from one-fourth to eight miles. Concededly, the extractions qualify for depletion allowances under the pertinent provisions of Internal Revenue Code of 1939, § 114, 26 U.S.C. § 114 (1952 ed.) and Internal Revenue Code of 1954, § 613, 26 U.S.C. § 613 (1958 ed.). Only the determination of the base for computation of the allowances, i. e. the gross income, is in dispute.

Taxpayer elected to take advantage of the Act of September 26, 1961, P.L. 87-312, 75 Stat. 674. It provides that, for the purpose of applying the depletion allowances accorded by the Internal Revenue Codes of 1939 and 1954,

"(1) gross income from the property shall be 50 per centum of the *amount for which the manufactured products are sold* during the taxable year except that with respect to such manufactured products, gross income from the property shall not exceed an amount equal to $12.50 multiplied by the number of short tons used in the manufactured products sold during the taxable year, and

"(2) for purposes of computing the 50 per centum limitation under section 613(a) of the Internal Revenue Code of 1954 (or the corresponding provision of the Internal Revenue Code of 1939), the taxable income from the property (computed without allowance for depletion) shall be 50 per centum of the taxable income from the manufactured products sold during the taxable year

(computed without allowance for depletion)." (Accent added.)

The "amount for which the manufactured products are sold" is the crux of this litigation. The specific and decisive question is stipulated by the parties to be: "[A]re the expenses of delivery by Pine Hall of its products to its customers to be included or excluded from such amount?"

Because of the system on which Pine Hall prices its product, we think as did the District Judge, that delivery expense is included within the statutory clause—"the amount for which the manufactured products are sold". The point is that Pine Hall, according to the *stipulations*, quotes an integrated figure as the amount for which its products sell. It is an *entire* sum embodying all manufacturing and sale factors, one of which is cost of delivery. It is not merely a price subject to addition for transportation to the purchaser. Cost of delivery is a fused, and not a wholly independent, additive in arriving at the price. There is no indication of an effort to conceal a standard delivery item in the list or zone prices.

The modus operandi of Pine Hall is detailed in the following paragraphs of the fact stipulations made by the parties and accented by us:

8.

"Of the products sold by Pine Hall, *approximately 98 per cent is delivered by Pine Hall* or by a private contract hauler engaged by Pine Hall. The remaining 2 per cent represents products picked up by the customer at the plant and products shipped by rail to points outside of the normal trade area. In the case of *brick*, Pine Hall has *established list prices* which apply to sales to customers in its normal trade area in North Carolina. * * * A different list price is in effect with respect to Virginia * * *. This difference in price is not based upon the length of the haul but upon a difference in the method of doing business in Virginia. In Virginia,

as distinguished from North Carolina, Pine Hall sells to dealers rather than directly to customers and the dealers are allowed commissions. The net price received by Pine Hall for the Virginia sales is approximately equal to the price applicable in the North Carolina counties listed above. With respect to the small proportion of brick which is picked up by the customer at the plant, Pine Hall has a plant price which is $3.00 per 1,000 brick less than the usual delivered price. These plant sales ordinarily represent a few hundred brick—that is, less than a truckload. Brick shipped by rail outside of the normal trade areas is shipped freight prepaid by Pine Hall and the *freight charge is taken into consideration in connection with a number of other factors in determining the delivered price.*

### 9.

"Pine Hall utilizes *a zone system of prices with respect to clay pipe and allied clay products.* In general, the zones are based upon distance from the plant at which the pipe is produced. A differential in price is related to the distance involved in the shipment to the particular zone, the price being generally higher as the distance is greater.

### 10.

"With respect to *all* of its products, Pine Hall operates on a *system of delivered prices* under which it *does not make a separate charge for transportation or delivery cost.* These *prices are designed to cover all of Pine Hall's costs and expenses incurred in producing and selling* its products and return to Pine Hall a fair profit. Pine Hall allows cash discounts on such prices and, where applicable, has paid North Carolina sales taxes on the basis of such prices, although such taxes are not applicable to transportation charges where separately stated."

In these peculiar circumstances, to repeat, the District Court found that the sale prices of Pine Hall's manufactures included delivery. This conclusion as a factual finding has generous support in the stipulations. Moreover, the conclusion adopts the obvious intent of Congress, in the Act of September 26, 1961, to simplify the ascertainment of the depletion allowance. The contrast of the Act with the prior statutes, the decisional law motivating its passage and the reasoning for his views are quite clearly expounded by the District Judge in his written opinion; Pine Hall-Pomona Corporation v. United States, 234 F.Supp. 792, with which we are in accord.

Acknowledgment is made of our debt to counsel for their condensation of the proof and presentation of the issue through stipulation.

Affirmed.